IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LLOYD HAYWOOD, | ) | |
| | ) | |
| Plaintiff | ) | No. 06 C 2264 |
| | ) | |
| v. | ) | Judge Coar |
| | ) | |
| CHICAGO POLICE OFFICERS MARC DELFAVERO (Star No. 19157), ROBERT FRANKS (Star No. 15935), BRENDAN GILL (Star No. 10945), CHRISTOPHER MARZANO (Star No. 18810), MARK MIRABELLI (Star No. 14191), WAYNE NOVY (Star No. 2733), TREVOR STOTTS (Star No. 14665), DANIEL TOWN (Star No. 13422), and OFFICER JOHN DOE, and CHICAGO POLICE SERGEANT MARK VAN GIESEN (Star No. 2513), all in their individual capacities, and THE CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Schenkier<br><br>JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

## SECOND AMENDED COMPLAINT

Plaintiff LLOYD HAYWOOD, by counsel, for his complaint against defendants CHICAGO POLICE OFFICERS MARC DELFAVERO (Star No. 19157), ROBERT FRANKS (Star No. 15935), BRENDAN GILL (Star No. 10945), CHRISTOPHER MARZANO (Star No. 18810), and MARK MIRABELLI (Star No. 14191), WAYNE NOVY (Star No. 2733), TREVOR STOTTS (Star No. 14665), DANIEL TOWN (Star No. 13422), and OFFICER JOHN DOE, and CHICAGO POLICE SERGEANT MARK VAN GIESEN (Star No. 2513), all in their individual capacities, and THE CITY OF CHICAGO, alleges as follows:

## INTRODUCTION

1. This is a civil rights action for damages brought pursuant to the Fourth, Fourteenth and First Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988. Plaintiff Lloyd Haywood sues the Individual Police Defendants for unlawfully seizing him outside of his home, preventing him from caring for his ten-year-old autistic daughter, tormenting him with a chainsaw in a public ritual of humiliation, conducting unlawful searches of his person and home, in the course of which they placed pornographic images on his personal computer for his daughter to discover, and repeatedly frustrating and mocking his efforts to seek redress.

## JURISDICTION AND VENUE

2. The jurisdiction of the Court is conferred by 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Lloyd Haywood is a forty-two-year-old African American man, a resident of the City of Chicago, Illinois, and a United States citizen.

5. Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Sergeant Van Giesen are sworn officers of the Chicago Police Department who are sued in their individual capacities for actions they took by virtue of their authority as police officers.[1]

---

[1] Defendants Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town and Doe shall sometimes hereafter be collectively referred to as the "Named Individual Defendants."

6. Defendant Marc Delfavero, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

7. Defendant Robert Franks, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

8. Defendant Brendan Gill, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

9. Defendant Christopher Marzano, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

10. Defendant Mark Mirabelli, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

11. Defendant Wayne Novy, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

12. Defendant Trevor Stotts, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

13. Defendant Daniel Town, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

14. Defendant John Doe, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

15.     Sergeant Van Giesen, at all times relevant to this Complaint, acted under color of state law as a police officer of the City of Chicago and within the scope of his employment.

16.     Defendant City of Chicago ("City") is an Illinois municipal corporation that operates the Chicago Police Department. The City was, at all times material to this Complaint, the employer and principal of Defendants Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Sgt. Van Giesen.

## FACTS

17.     On September 16, 2004, at approximately 6:50 p.m., plaintiff Lloyd Haywood stepped onto the porch of his Stateway Gardens apartment, located on the fifth floor of 3651 South Federal Street in Chicago. He intended to call his ten-year-old daughter, who had been playing in the playground below, in for dinner.

18.     As Mr. Haywood looked for his daughter from his porch, one of the Named Individual Defendants approached him from behind. The defendant forced Mr. Haywood against a metal grated fence that enclosed the porch. The same defendant searched Mr. Haywood and placed handcuffs tightly around his wrists, locking Mr. Haywood's hands behind his back. The defendant then took Mr. Haywood from his porch down the stairs to the fourth floor of the building.

19.     The Named Individual Defendants held Mr. Haywood in handcuffs outside on the fourth floor, while Chicago police officers searched other apartments in the building. The handcuffs were so tight that he lost feeling in his hands.

20.     A second Named Individual Defendant searched Mr. Haywood's person a second time.

4

21. Mr. Haywood pleaded with the defendants to allow him to tend to his young daughter. He repeatedly expressed concern for her safety and informed the defendants that she was autistic and had special needs. The defendants ignored his pleas.

22. The defendants brought Mr. Haywood in handcuffs back up to the fifth floor, to a porch outside of a neighbor's apartment. The defendants held Mr. Haywood as a prisoner on the open porch, visible to his neighbors and other community members looking on.

23. The defendants mocked Mr. Haywood and laughed at him, as he continued to express concern about the safety of his daughter. A third named defendant threatened Mr. Haywood, "Who up here is getting smart? I'm gonna fuck them up!"

24. The defendants continued to hold Mr. Haywood on the open porch, while they searched the homes of some of Mr. Haywood's neighbors.

25. Mr. Haywood's young daughter eventually returned with an adult neighbor to find Mr. Haywood standing outside of the neighbor's apartment in handcuffs, in the custody of the defendants. Even after seeing Mr. Haywood's daughter, the defendants continued to ridicule him.

26. One of the defendants found a fire extinguisher in the apartment, outside of which Mr. Haywood was being held. As Mr. Haywood remained in handcuffs and other community members looked on, the defendant leaned out the window of the fifth floor apartment and shot a white cloud of foam from the fire extinguisher. The defendants howled with laughter.

27. The third named defendant removed a chainsaw from the neighbor's apartment. He pulled the cord repeatedly in an attempt to start the motor. After a number of failed attempts, the chainsaw's motor engaged. As Mr. Haywood stood defenseless, with his hands cuffed

behind his back, the third defendant charged at him with the chainsaw, bringing the blade close to the back of his neck, while gunning the motor.

28. "What should I cut off next?" the third defendant asked his fellow defendants, as he swung the whirring chainsaw within inches of Mr. Haywood's head, neck, and ears.

29. Terrified, Mr. Haywood demanded to speak to a sergeant. The second named defendant responded by laughing in Mr. Haywood's face. The defendant boasted that there was nothing that a sergeant could do to the defendants. The other Named Individual Defendants joined in the mocking laughter.

30. The police later uncuffed Mr. Haywood and released him.

31. During the time the police held Mr. Haywood outside in handcuffs, the defendants ransacked his home, leaving his belongings in disarray. The defendants stripped and flipped Mr. Haywood's and his daughter's beds, turned over his couch, and tossed books, clothes, and other belongings throughout the apartment.

32. In the course of their unlawful search of Mr. Haywood's home, the defendants invaded his personal computer and accessed pornographic images from the Internet, which they left on the computer screen in Mr. Haywood's living room.

33. When Mr. Haywood returned to his home, he found his belongings strewn throughout the apartment, and he saw his daughter in his living room with another little boy staring at his computer screen.

34. She looked to her father, puzzled and hurt, as she pointed to the pornographic images left by the defendants. The little boy asked, "What is this?"

35. Mr. Haywood dialed "911" to report the defendants to a police supervisor.

36. After some minutes, Mr. Haywood went to his porch to see if a supervisor had come in response to his call. A group of officers, including some of the Named Individual Defendants, was present outside his building in the parking lot.

37. A fourth defendant called to Mr. Haywood to come downstairs to talk with the officers.

38. Mr. Haywood complied. He described to this defendant the abuse to which he had been subjected, and identified some of the Named Individual Defendants, who were still present outside the building, as the primary perpetrators of the abuse.

39. This fourth defendant grabbed the second named defendant in jest and placed him face first against a police car. Continuing their charade, the fourth defendant frisked the second defendant. As the fourth defendant began to read the second defendant his Miranda rights, "You have the right to remain silent...," the defendants and other officers present burst into mocking laughter.

40. The second named defendant taunted Mr. Haywood, "See. I told you. What did you think was going to happen? Nothing is going to happen to us."

41. The third named defendant grabbed his crotch and called to Mr. Haywood, "Come here, nigger. Come here and suck my dick."

42. The defendants continued to laugh at Mr. Haywood.

43. "I told you," the third defendant repeated. "What the fuck did you think was going to happen? Come on motherfucker and suck my dick!" The other defendants laughed.

44. The fourth defendant took no action to report Mr. Haywood's complaint and prevented Mr. Haywood from learning the identities of the named defendants.

7

45. On information and belief, each of the Named Individual Defendants were present on the scene and participated in the detention and abuse of Mr. Haywood, or failed to intercede to stop the abuse, despite having a reasonable opportunity to do so.

46. At some point after 9:15 p.m., after the other defendants had left the scene, Sergeant Van Giesen arrived at Mr. Haywood's apartment in response to Mr. Haywood's call for a supervisor. On information and belief, Sergeant Van Giesen had been present on the scene during the abuse of Mr. Haywood by Van Giesen's subordinate officers. Sergeant Van Giesen surveyed the damage in Mr. Haywood's apartment, including the pornography on the computer. When Mr. Haywood expressed his desire to have the officers disciplined and prosecuted for their abusive behavior, Van Giesen grinned and told Mr. Haywood, "Ain't nothing going to happen. If you go to OPS, FBI whatever, there is nothing going to happen."

47. On information and belief, Sergeant Van Giesen took no action to report Mr. Haywood's complaint and prevented Mr. Haywood from learning the identities of the defendants.

48. Mr. Haywood did not give his permission or consent to any of the defendants to enter or search his home or his person on September 16, 2004.

49. At no time did Mr. Haywood provide the defendants with probable cause or any other legal justification to search or seize his person, his home, or his personal belongings.

50. The defendants did not possess a search warrant to search Mr. Haywood's home nor an arrest warrant to arrest anyone in Mr. Haywood's household.

51. The defendants' seizure and physical and mental abuse of Mr. Haywood were excessive, unreasonable, and unsupported by any legal justification.

52. Each of the defendant officers acted knowingly and intentionally, wantonly or with reckless or callous disregard of, or indifference to, the rights of Mr. Haywood.

53. The defendant officers' abuse of Mr. Haywood, as described above, was motivated, in part, by their racial animus against Mr. Haywood and was committed with the intent to discriminate against Mr. Haywood on account of his race and color of his skin.

54. As a direct and proximate result of the conduct of the defendants described above, Plaintiff Lloyd Haywood was deprived of his rights as stated below. Plaintiff suffered and continues to suffer physical injuries and loss of sensation in his fingers, mental and emotional distress, humiliation, embarrassment, discomfort, fear, and anxiety. Plaintiff further suffered the loss of his freedom and the feeling of security in and around his home.

### CLAIM I: FOURTH AND FOURTEENTH AMENDMENTS
(Unreasonable Seizure and Detention)

55. Plaintiff realleges and incorporates herein paragraphs 1-54 above.

56. Plaintiff asserts Claim I of this action against Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen in their individual capacities. Claim I arises under 42 U.S.C. § 1983.

57. The defendants' unlawful and unreasonable seizure of Plaintiff's person without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of his Fourth and Fourteenth Amendment rights to be secure in his person from unreasonable seizures. The unreasonable manner and length of Plaintiff's seizure and detention and the excessive force used by the defendants during Plaintiff's detention further deprived Plaintiff of his Fourth Amendment right to be free from unreasonable seizures.

9

58. The aforementioned actions and omissions of the defendants in the face of a Constitutional duty to intercede were the direct and proximate cause of Plaintiff's Constitutional violations and injuries, mental suffering, anguish, embarrassment, humiliation, and loss of personal freedom, as set forth more fully above.

59. Each of the Police Defendants' actions and omissions were intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant Officer and Van Giesen is necessary to punish the defendants for their misconduct, and to deter similar misconduct.

**CLAIM II: FOURTH AND FOURTEENTH AMENDMENT**
(Illegal Search of Person, Home, and Effects)

60. Plaintiff realleges and incorporates herein paragraphs 1-54 above.

61. Plaintiff asserts Claim II of this action against Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen in their individual capacities. Claim II arises under 42 U.S.C. § 1983.

62. The defendants' unreasonable search of Plaintiff's person, home, and personal possessions, without a warrant, probable cause, or reasonable suspicion, deprived Plaintiff of his Fourth and Fourteenth Amendment rights to be secure in his person, home, papers, and effects against unreasonable searches and seizures.

63. The aforementioned actions and omissions in the face of a constitutional duty to intercede by the defendants were the direct and proximate cause of Plaintiff's constitutional violations and injuries, mental suffering, anguish, embarrassment, humiliation, and loss of personal freedom, as set forth more fully above.

64. Each of the defendants' actions was intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each Defendant is necessary to punish the defendants for their misconduct, and to deter similar misconduct.

## CLAIM III: FOURTH AMENDMENT
(Excessive Force)

65. Plaintiff realleges and incorporates herein paragraphs 1-54 above.

66. Plaintiff asserts Claim III of this action against Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen in their individual capacities. Claim III arises under 42 U.S.C. § 1983.

67. The actions of the defendants, in forcing and keeping handcuffs around Mr. Haywood's wrists so tightly that they cut off his circulation for an extended period of time, and in menacing Mr. Haywood with a running chainsaw, without probable cause, as described more fully above, deprived Plaintiff of his Fourth Amendment right to be free from the use of excessive and unreasonable force.

68. The aforementioned actions and omissions in the face of a constitutional duty to intercede by the defendants were the direct and proximate cause of Plaintiff's constitutional violations and injuries, physical injuries, continuing pain, anguish, and mental suffering, as set forth more fully above. Each of the defendants' actions and omissions were intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against each of the defendants is necessary to punish the defendants for their misconduct, and to deter similar misconduct.

## CLAIM IV: FOURTEENTH AMENDMENT
(Equal Protection)

69.     Plaintiff realleges and incorporates herein paragraphs 1 through 54 above.

70.     Plaintiff asserts Claim IV of this action against Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen in their individual capacities. Claim IV arises under 42 U.S.C. § 1983.

71.     The actions and omissions of the defendants, in seizing Plaintiff; searching his person, home, and belongings; emotionally and verbally abusing him; threatening his life; and assaulting, intimidating, and humiliating him, were undertaken with the intent to discriminate against Plaintiff on account of Plaintiff's race and skin color, denying Plaintiff of his Fourteenth Amendment right to equal protection under the law.

72.     The aforementioned actions and omissions in the face of a constitutional duty to intercede by the defendants were the direct and proximate cause of Plaintiff's constitutional violations, physical and emotional injuries, loss of personal freedom, and damage to and perversion of personal property, as set forth more fully above.

73.     The award of punitive damages against each defendant is necessary to punish him for his misconduct, and to deter similar misconduct.

## CLAIM V: SECTION 1983 CONSPIRACY

74.     Plaintiff realleges and incorporates herein paragraphs 1-54 above.

75.     Plaintiff asserts Claim V of this action against Defendant Officers Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen in their individual capacities. Claim V arises under 42 U.S.C. § 1983.

76. Defendants Delfavero, Franks, Gill, Marzano, Mirabelli, Novy, Stotts, Town, Doe and Van Giesen acted jointly, in concert and conspiratorially with each other to deprive Plaintiff of his constitutional right to be secure in his person, papers, and effects from unreasonable searches and seizures, and Plaintiff's right to equal protection under the law. The defendants, acting together and under color of law, reached an understanding, engaged in a course of conduct and otherwise conspired among and between themselves to deprive Plaintiff of his constitutional rights. The defendants' course of conduct deprived Plaintiff of those rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.

77. In furtherance of this conspiracy, the defendants committed the overt acts set forth in the Fact above, including but not limited to the defendants' seizure, handcuffing, and detention of the Plaintiff; their search of his person, home, and personal belongings; their search of his personal computer and downloading of sexually explicit images; their physical, verbal, and mental abuse of Plaintiff; and their attempts to hide and cover up their abuse.

78. Each of the Police Defendants was a voluntary participant in the common venture to deprive Plaintiff of his Fourth and Fourteenth Amendment rights. Each of the Police Defendants personally participated in the unconstitutional conduct or acted jointly with other defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan, and failed to take action to prevent such conduct from occurring.

79. The Police Defendants' conspiracy and the overt acts committed in furtherance thereof directly and proximately caused Plaintiff's Constitutional violations and injuries, as set forth above.

**CLAIM VI: FIRST AMENDMENT**

80. Plaintiff realleges and incorporates herein paragraphs 1-54 above.

81. Plaintiff asserts Claim VI of this action against Defendant Officer Doe and Sgt. Van Giesen in their individual capacities. Claim VI arises under 42 U.S.C. § 1983.

82. By Defendants' actions and omissions alleged herein, Defendant Doe and Defendant Van Giesen violated Plaintiff's First Amendment right to petition the government for redress. By deliberately hiding or failing to investigate the identity of the other Police Defendants, Defendant Doe and Sgt. Van Giesen interfered and substantially weakened the prospect of relief through established administrative channels and may have prohibited relief altogether.

83. The aforementioned actions of Defendants Doe and Van Giesen were the direct and proximate cause of Plaintiff's Constitutional violations, humiliation, embarrassment, feeling of helplessness, and loss of faith in government and justice.

84. Each of the Defendant's actions or omissions were intentional, willful, and exhibited a conscious disregard or reckless indifference to Plaintiff's rights. The award of punitive damages against Defendants Doe and Van Giesen is necessary to punish defendants for their misconduct, and to deter similar misconduct.

WHEREFORE, Plaintiff prays that the Court:

(A) Award Plaintiff judgment against each of the Individual Police Defendants, jointly and severally, for actual compensatory damages in an amount to be determined at trial;

(B) Award Plaintiff judgment against each of the Individual Police Defendants, jointly and severally, for appropriate punitive damages in an amount to be determined at trial;

14

  (C) Award costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

  (D) Grant such other and further relief as this Court deems equitable and just.

### CLAIM VII: ILLINOIS LOCAL GOVERNMENT AND LOCAL GOVERNMENT EMPLOYEES TORT IMMUNITY ACT
(745 ILCS 10/9-102B Defendant City of Chicago)

  85. Plaintiff realleges and incorporates herein paragraphs 1-54 above.

  86. Claim VII of this Complaint is an Illinois statutory claim against Defendant City of Chicago. This Court has jurisdiction of this claim under 28 U.S.C. § 1367.

  87. Defendant City of Chicago is the employer of the Individual Police Defendants and Van Giesen.

  88. The Police Defendants each committed the acts alleged above under color of state law and in the scope of his employment as an employee of the City of Chicago.

  WHEREFORE, should any of the Individual Police Defendants be found liable on one or more of the claims set forth above, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, the Defendant City of Chicago be found liable for any judgment Plaintiff obtain thereon against said defendant, as well as for all attorneys' fees and costs awarded.

  PLAINTIFF DEMANDS TRIAL BY JURY ON ALL CLAIMS.

            Respectfully submitted,


            _/s/ H. Melissa Mather_____
            One of Plaintiff's Attorneys

Date: September 14, 2006

Craig B. Futterman
H. Melissa Mather
EDWIN F. MANDEL LEGAL AID CLINIC
University of Chicago Law School
6020 S. University
Chicago, Illinois 60637
(773) 702-9611

16